## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ROSA BÁEZ-VIERA, et al.,

**Plaintiff(s)**

v.

COOPERATIVA ABRAHAM ROSA, et al.,

**Defendant(s)**

**Civil No.** 08-2045 (JAG)

### OPINION AND ORDER

Before the Court are Defendant Cooperativa Abraham Rosa's Objections to Magistrate Judge Bruce McGiverin's Report and Recommendation on Defendant's Motion for Summary Judgment. (Docket No. 93). Defendant objects to the Magistrate Judge's recommendation to deny summary judgment on Plaintiff's claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., claims of pregnancy discrimination and retaliation under the Pregnancy Discrimination Act of Title VII ("PDA"), 42 U.S.C. § 2000e(k), and related claims under Puerto Rico law.

### FACTUAL BACKGROUND

The Court takes the facts from Magistrate Judge McGiverin's Report and Recommendation. Defendant's objections to the Magistrate Judge's findings of fact will be addressed in the section of this opinion titled "Discussion".

**Civil No.** 08-2045 (JAG)                                                          2

Defendant Cooperativa Abraham Rosa (hereinafter "Cooperativa") is a savings and credit cooperative with approximately 37 employees. Plaintiff Rosa Báez Viera, (hereinafter "Báez"), born on November 10, 1965, worked as a teller at Cooperativa from May 9, 1997 until her termination on June 8, 2007. Upon her termination, Báez was 41 years old.

Since 2001, Báez's immediate supervisor at Cooperativa was Lizette Colón (hereinafter "Colón"), the supervisor for all tellers. Báez was also indirectly supervised by Colón's superior, Vice-President Sol Matías Cortés (hereinafter "Matías"). The latter two were supervised by the Executive President, Defendant Luis López Román, (hereinafter "López"). With the assistance and advice of Matías, Defendant López is the final decision maker on hiring and firing. Defendant López's ultimate decision to terminate Báez is the object of this suit.

<u>Báez's Pregnancies</u>

On May 17, 2006, Báez, then six months pregnant, became ill at work and told Colón she was feeling agitated and scared. Colón testified that she told Báez to leave work if necessary. Báez testified that she was not permitted to leave until other tellers came back from their lunch breaks, and eventually left work around midday for her doctor's office. Colón did not inform Defendant López or Matias of Báez's departure from work.

**Civil No.** 08-2045 (JAG)                                                    3

Later that day, Báez gave birth to a premature infant that died tragically three or four days thereafter. Báez took maternity leave from May 18 to July 13, 2006.

Around February 2007, Báez learned she was pregnant again, and told her coworkers at Cooperativa. She later miscarried the pregnancy in May 2007.

While plaintiffs allege that the miscarriage occurred on Sunday, May 13, 2007 there is conflicting testimony about the exact date and about who informed Cooperativa about the incident. Báez's husband Ortiz testified that on the day of the miscarriage, Báez called him from her job; he took her to a clinic, then called Cooperativa and informed Colón of the miscarriage. However, Báez's obstetrician, Dr. Carlos Fonseca Salgado, testified that he treated Báez at Pavia Hospital on that day, and that the clinic where he had been seeing Báez is not open on Sundays. According to Báez, she was home that Sunday when she started bleeding, so she went to her doctor's office. Upon finding it closed, she called Dr. Salgado, who met her at Pavia's emergency room ("ER"). At the ER, Dr. Salgado examined Báez and could not find a fetal heartbeat.

Báez testified that she went home that night, but that the next morning, Monday, May 14, she went to the clinic and was sent to Pavia's ER. There, she learned she had miscarried the

pregnancy and underwent a dilation and curettage ("D & C") procedure. Báez testified that she called Cooperativa before entering the ER. According to an affidavit by Báez, she informed Cooperativa she would miss work that day due to the D & C and later called back to give Colón an update, since Cooperativa requires employees to contact their direct supervisor to inform them of absences. However, according to Báez, she was informed that she had to speak to Matías instead. When the call was transferred to Matías, Matías, according to Báez, aggressively asked Báez when she would be returning to work and suggested she get a doctor's clearance to return to work.

The next day, Tuesday, May 15, 2007, Báez visited her doctor's office to get cleared for work. Accordingly, Dr. Salgado issued a pre-signed "Disability Certificate," which he authorized his secretary to fill out. Dr. Salgado testified, based on the certificate, that Báez was cleared to return to work on May 15, 2007. Báez returned to work on May 16, 2007, after two days of maternity leave, still bleeding heavily from the D & C procedure. Cooperativa received the Disability Certificate that day, but because the end date for Báez's incapacity had been left blank on the certificate, Matías spoke with Dr. Salgado's secretary and had his office fax Cooperativa an amended certificate that reflected an end date of May 15,

2007. Matías testified that the blank date needed to be filled out in order to pay Báez two days' maternity leave. The parties dispute whether Báez authorized the amendment to the certificate. Dr. Salgado was not involved in the issuance of the amended certificate and testified that he did not remember authorizing his secretary to fill in the end date.

Báez attests she returned to work so promptly because she feared she would be fired if she did not. Colón testified that Báez told her she returned to work so quickly after the miscarriage because she had had many absences in the preceding months and did not want to continue missing work. According to Sherley Pagán Díaz (hereinafter "Pagán"), a teller at Cooperativa since 1999, López was annoyed by Báez's absences. According to Jamillette Delgado Martínez (hereinafter "Delgado"), also a teller, female employees thought it bad to become pregnant because the administration at Cooperativa frowned on the resulting absences and consequent costs.

On her return to work, Báez's coworkers, including Matías, asked whether she intended to become pregnant again. She expressed, as she had after losing the previous pregnancy, that she would. Though Defendant López denies knowledge of Báez's plans, according to Pagán, Báez's intentions were common knowledge at Cooperativa.

During the period between January 1, 2006 and June 8, 2007, Báez was the only teller to become pregnant. Báez took two weeks of previously-scheduled vacation time from May 21 to June 4, 2007. She returned to work the week of June 4, 2007.

<u>Báez's 2007 Performance Evaluation and Subsequent Termination</u>

Colón begins the process of annual employee evaluations by preparing a draft using a standard form for each teller. After observations and suggestions by Vice President Matías, Colón prepares the final version of the evaluation and submits it to the Executive President, Defendant López. The Executive President reviews the evaluation and includes his comments for discussion with the employee's supervisor; he may also make changes to the evaluation. The employee's direct supervisor discusses the evaluation with the employee only after Defendant López's revision.

Colón provided Báez with a copy of her annual evaluation for 2007 sometime between May 16 and June 7, 2007. The evaluation gave Báez an overall score of "poor," which Báez had never before received, and which Colón had never before given a teller. Báez was graded as "average" in the areas of "knowledge, skill, and ability," "performance and productivity," and "quality," but "poor" in "compliance" and "responsibility," two areas in which she had been graded "good" in her last three

evaluations. According to López, the evaluation's section on "compliance," along with memoranda in Báez's employee file about her failure to follow procedures, reflected Cooperativa's progressive need to correct for account imbalances caused by Báez's errors. Báez signed the evaluation and did not express her internal disagreement with its contents, as she feared reprisal from Cooperativa's administration if she did not sign it. Báez had not expressed disagreement with previous years' evaluations, although her 2004, 2005, and 2006 evaluations had noted her need to improve performance, productivity, and/or attendance. Aside from a "poor" score in the area of "attendance and punctuality" in 2006, Báez's previous three evaluations gave her area scores that were mostly "good" or "excellent" in 2004 and 2005 and "average" or "good" in 2006, amounting to overall scores of "average" or "good." Báez had received salary increases in 2000, 2002, 2003, 2004, and 2005.

Colón testified that when she met with Matías about Báez's evaluation, Matías made notes on Colón's draft and said that due to the losses Báez had caused through register discrepancies, the "average" rating Colón had initially given Báez was wrong. Colón testified that Matías suggested changes in the areas of "compliance" and "responsibility," in which Colón had rated Báez as "average". Matías asked Colón to incorporate the suggested

changes, which Colón did, resulting in a final overall rating of "poor" rather than the "average" overall score Colón testified Báez would have received but for Matías's changes. Cooperativa's management had never previously changed one of Báez's evaluations to reflect a "poor" score.

Defendant López approved Báez's evaluation without making any changes. According to López, it was his understanding that Colón alone prepared the evaluation.

Matías and Cooperativa's attorney met briefly with Báez at the end of the business day on Friday June 8, 2007, and handed her a letter of termination signed by Defendant López. According to the letter, Báez was terminated as a result of her latest evaluation, which, the termination letter noted, graded her as "poor" in execution and performance, meaning she "did not fulfill the institutional expectations or the requirements of the position." The letter does not mention any layoffs or restructuring efforts at Cooperativa. Pagán testified that before her dismissal, Báez had cleaned out her desk drawer and taken out her belongings in anticipation of being fired.

Matías testified that Cooperativa terminated Báez because, starting in the year 2000, the incidence of Báez's procedural mistakes and register deficiencies increased. Particularly, Matías noted that Báez's shortages increased drastically in

2007, amounting to $700 by May. Matías testified that she met with Báez once or twice in early 2007 about her errors and warned Báez that, despite repeated admonitions, she was still being given an opportunity to improve her record. Colón testified that she only remembers Cooperativa giving Báez written warnings on January 10 and February 1, 2007. Báez was never suspended during the ten years she worked for Cooperativa.

Cooperativa did not provide Báez with any additional job training in 2007 after her errors. Matías testified that Báez had already been trained, had vast experience as a teller, and knew all of Cooperativa's procedures. Matías believes Báez to have been one of Cooperativa's most experienced tellers.

It is not uncommon for tellers to occasionally make mistakes that result in register discrepancies, such as coming up short on cash at the end of a shift. Colón prepares a monthly report of all tellers' transactions that lists each teller's errors and the sum of any discrepancies. Pagán, who is 36 years old, testified that in April 2007, her register came up short by nearly $500, but she was not fired or suspended, nor did she receive a "poor" annual evaluation. According to teller Maritza Ramos, who started working at Cooperativa around 2003, discrepancies in tellers' registers are a common occurrence. Ramos stated that she had a register shortage of $450 in

September 2005 and that another error by her in September 2007 caused a loss to Cooperativa of $2,000. Ramos stated that she received memos from Cooperativa about both incidents. She is still employed by Cooperativa. Nonetheless, according to Colón, there have been instances when Cooperativa tellers have been terminated after a written admonishment due to discrepancies in their registers.

   Around May 2007, shortly before Báez's termination, Colón had requested an additional part-time employee, and another employee to replace a teller who had decided to leave Cooperativa. While Báez was on vacation, Matías had an ad for a teller placed in the newspaper. Evenid Aponte responded to the ad, and Cooperativa hired her as a new teller and started her on the job on Tuesday, June 12, 2007, five days after Báez's termination. Cooperativa had decided to hire Aponte prior to June 11, 2007. On the day she was hired, Aponte was 30 years old and was not pregnant. On October 22, 2007, Cooperativa hired Fatima Ramos as a teller. Ramos was 24 years old and was not pregnant when hired. Báez herself was substituted by Irmary Mercado, who began working at Cooperativa at the end of July 2007. Mercado was not yet 30 years old, and was not pregnant when hired. Colón testified that she did not know exactly who

substituted Báez, but it is undisputed that none of her replacements were pregnant or over forty years of age.

<u>Cooperativa's Disciplinary Practices</u>

The disciplinary process at Cooperativa is initiated by the employee's direct supervisor, who takes the employee's file, including a record of all the incidents of non-compliance by the employee, to the Vice-President of Operations, Matías. Cooperativa management then investigates and decides what disciplinary action to take after consulting with its labor counsel. It is also Matías who informs the employee of his or her termination, and hands the employee a letter of termination. Matías only makes recommendations on the matter of terminating employees; the ultimate decision is Defendant López's, who signs the letter of termination. Indeed, López testified that he made the decision to terminate Báez.

In 1999, Báez received a copy of Cooperativa's "Employee's Informative Manual" ("Manual"), and she received a revised edition of the Manual in 2005. She was given an orientation on the Manual and affirmed that she read and understood its contents. The Manual states that an employee who receives a grade of "poor" on the annual evaluation will begin a three-month probationary period at Cooperativa and will be informed of improvement alternatives and the consequences of not showing

significant improvement during that period. Báez was not given the probationary period before her termination.

However, the Manual also states that there are actions an employee can take that can entail termination if previous corrective measures have not been effective or if it is warranted by the severity of the event. Among these events is the failure "to comply with the procedures of inactive account [sic] and the protection and management of transactions and custody of cash and values and norms of institutional security." Matías testified that Báez was terminated for just such a violation, and that Báez's termination letter included the "concept" of that section of the Manual, although it did not cite the Manual specifically. Matías testified that Cooperativa had not invoked that section of the Manual to terminate Báez earlier in 2007, because they had decided to give Báez an opportunity to improve her record. However, Matías testified, by the time of her annual evaluation, Báez's losses had reached an intolerable level, and the decision was made to terminate Báez.

Cooperativa's Alleged Treatment of Báez and Other Pregnant Employees

Báez and some of her coworkers have stated that during Báez's pregnancies, Defendant López repeatedly made comments to Báez about her being pregnant at her age. According to Báez,

López would frequently comment that "any child [Báez] may give birth to would call [Báez] grandmother instead of mother." Colón indeed testified that Báez once told her that López had made a similar comment. However, according to Colón, Báez never complained to her of being discriminated against by López during any of her pregnancies. Colón testified that she did not hear López make such comments to Báez, has not heard of such comments from any other employees, and has never observed discriminatory conduct at Cooperativa toward pregnant employees. Colón also mentioned that a teller who was pregnant had been hired at some point, but could not recall when. Matías also testified that she had not heard López make any remarks on Báez's pregnancy or age.

Delgado testified that Defendant López made fun of Báez's age before and during her pregnancy, and that he would make mocking comments to Báez in front of other employees. According to Delgado, López's comments included multiple variations on the theme of whether Báez would be a mother or a grandmother, the remark "[w]hen you are vomiting it will not be known whether it is because you are pregnant or due to menopause", and negative comments about Báez's appearance while pregnant. Báez appeared to Delgado to be calm and patient in response to the comments, whose dates Delgado could not remember, though she testified she learned of at least one such comment per day. Delgado testified

that López did not mock any other workers. Delgado testified that she did not report López's comments because she felt that the supervisor would not do anything about it, and that despite the frequency of López's comments, no one asked him to stop. According to Delgado, during Báez's first pregnancy, two other younger Cooperativa employees, neither of whom was a teller, were also pregnant. Delgado testified that those employees received passes to use the building's elevator; Báez did not. Delgado testified that though she did not witness any discriminatory conduct towards the other two pregnant employees, they were transferred to other roles due, she thought, to their pregnancies. Finally, Delgado testified that López once told her there was an epidemic of pregnancy at Cooperativa and asked Delgado whether she was "operated" (*i.e.*, had had a tubal ligation).

Pagán testified that she observed that Defendant López treated Báez differently after Báez became pregnant. Pagán testified that during Báez's first pregnancy, López would come to the tellers' area to make jokes and offensive comments intended in jest. Pagán also testified that she heard López comment to Báez that she was too old to have children, and ask whether the child's schoolmates would call Báez mother or grandmother.

Colón testified that during her own pregnancy, before she became a supervisor, she received an accommodation at her teller station. Pagán testified that her experience at Cooperativa during her pregnancy was normal; she was never humiliated and her job functions were not changed. Elizabeth Sánchez García (hereinafter "Sánchez"), a teller at Cooperativa from 1996 until 1999, took a leave of absence from Cooperativa during her last three months of pregnancy and testified that she experienced no improper or discriminatory conduct at work. On the other hand, former teller Norma Vázquez (hereinafter "Vázquez"), who worked at Cooperativa from 1994 to 1996, stated in an affidavit that when López learned she was pregnant, he asked her to resign.

<u>Procedural History</u>

In December 2007, Báez filed a charge of discrimination with the Equal Employment Opportunity Commission (hereainfter "EEOC"), and Cooperativa and López filed a response to Báez's charge. López stated in an affidavit to the EEOC that Báez was terminated due to her poor performance, and Cooperativa's need to make adjustments in order to ensure regulatory compliance and to maintain competitiveness, which entailed reducing the workforce and operating costs. These adjustments included terminating Báez, whose performance had

caused Cooperativa economic  losses. The EEOC issued Báez a
right-to-sue letter in June 2008.

Plaintiffs filed the instant complaint on September 15,
2008, alleging several claims under federal and Puerto Rico
employment law against Cooperativa and other defendants. The
Court dismissed several of the claims with orders on motions to
dismiss.[1] The remaining claims are the subject of Defendants'
Motion for Summary Judgment, (Docket No. 35) which was referred
to Magistrate Judge McGiverin for a Report and Recommendation on
March 24, 2010. (Docket No. 89). Now before the Court are
Defendants' objections to Magistrate Judge McGiverin's findings
and recommendations. (Docket No. 93).

**STANDARD OF REVIEW**

<u>Review of Magistrate Judge's Report and Recommendation</u>

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)
and Local Rule 503, a district court may refer dispositive
motions to a United States magistrate judge for a report and
recommendation. See <u>Alamo Rodriguez v. Pfizer Pharmaceuticals,
Inc.</u>, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely
affected party may "contest the [m]agistrate [j]udge's report

---

[1]  Dockets No. 31 & 91. The Court adopts the Magistrate Judge's recommendation
to dismiss the Ortiz-Báez Conjugal Partnership's derivative claims under
Articles 1802 & 1803 of the Civil Code Puerto Rico, since Ortiz's claims,
also derivative, were voluntarily dismissed as time barred. In any case,
Plaintiff made no objection to this recommendation by Magistrate Judge
McGiverin.

and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States v. Mercado Pagán, 286 F. Supp. 2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Rivera-De-Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Alamo Rodriguez, 286 F. Supp. 2d at 146 (citing Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985)). However, if the affected party fails to timely file objections, the district court can assume that it has agreed to the magistrate judge's recommendation. Id.

Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)3; Meléndez v. Autogermana, Inc., 622 F.3d 46, 49 (1st Cir. 2010). The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986)(quoting Fed. R. Civ. P. 56(e)). "Once the moving party
has properly supported [its] motion for summary judgment, the
burden shifts to the nonmoving party, with respect to each issue
on which [it] has the burden of proof, to demonstrate that a
trier of fact reasonably could find in [its] favor." Santiago-
Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st
Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306
(1st Cir. 1997)); Cruz-Claudio v. García Trucking Serv., Inc.,
639 F. Supp. 2d 198, 203 (D.P.R. 2009.)

     "[T]he mere existence of *some* alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no *genuine* issue of *material* fact." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v.
Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J.
Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,
76 F.3d 1245, 1251 (1st Cir. 1996))("'[N]either conclusory
allegations [nor] improbable inferences' are sufficient to
defeat summary judgment.")

          An issue is "genuine" if the evidence of
          record permits a rational factfinder to
          resolve it in favor of either party. See
          Medina-Muñoz v. R.J. Reynolds Tobacco Co.,

> 896 F.2d 5, 8 (1st Cir. 1990). A fact is
> "material" if its existence or nonexistence
> has the potential to change the outcome of
> the suit. See Martínez v. Colón, 54 F.3d
> 980, 984 (1st Cir. 1995).

Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st
Cir. 2010).

The nonmoving party must produce "specific facts showing
that there is a genuine issue for trial." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed.
R. Civ. P. 56(e)); see also López-Carrasquillo v. Rubianes, 230
F.3d 409, 413 (1st Cir. 2000); Amira-Jabbar v. Travel Servs.,
Inc., 726 F. Supp. 2d 77, 84 (D.P.R. 2010).

**DISCUSSION**

Plaintiff Báez explicitly states that she has no objection
to Magistrate Judge McGiverin's recommendation to dismiss her
claims of hostile work environment under ADEA and PDA,
retaliation under ADEA, and her claim under Puerto Rico Law 3.
Therefore, after review of Magistrate Judge McGiverin's grounds
for dismissal, the Court agrees with the recommendation, and
grants summary judgment dismissing these claims.

As a preliminary matter, we address Plaintiff's objection
to Magistrate Judge McGiverin's finding that Plaintiff's
statement of uncontested material facts, (Docket No. 58-2), and
supplemental statement of uncontested material facts, (Docket

No. 66), do not comply with Local Rule 56(c) and thus do not properly controvert the facts set out by Defendants, and the Magistrate Judge's decision to disregard Plaintiff's amended opposing statement of uncontested material facts. (Docket No. 83).

Local Rule 56(c) requires of a litigant submitting an opposing statement of material facts that it must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." Local Rule 56(c).

As to Plaintiff' statement of uncontested material facts and supplemental statement of uncontested material facts, we plainly agree with the Magistrate Judge's determination that neither document meets the rigors of Local Rule 56(c). Plaintiff Báez's statement of uncontested material facts, (Docket No. 58-2), attempts to dispute Defendant's statement of uncontested material facts by merely listing those facts that she is willing to stipulate, and stating that it disputes the rest; nothing more. Plaintiff's supplemental statement, (Docket No. 66), adds a few facts, but does nothing to cure the defect in the original statement. Plaintiff made no attempt to cite to the record, or

to dispute each fact individually by paragraph number, a clear violation of Local Rule 56(c).

Plaintiff argues in essence that the purpose of Local Rule 56(c) is not to penalize litigants, but to make sure that the record before the Court is organized and coherent. Here, Plaintiff Báez argues, she ultimately submitted an amended statement of facts that did comply with Rule 56(c), (Docket No. 83), but the Magistrate Judge chose to disregard it. This is too severe a measure for Plaintiff, given the fact that at times parties are allowed to amend their statements of facts if needed.

Plaintiff is correct that the purpose of Local Rule 56(c) is not to punish litigants. The Magistrate Judge's disregard of Plaintiff's statement of facts is one consequence of disobeying Local Rule 56(c); it is an enforcement mechanism that Plaintiff brought upon herself, and that the Court must resort to in order to ensure that the purpose of Rule 56(c) is achieved.

Plaintiff is also correct that parties are at times allowed to amend their statements of fact. However, Plaintiff never requested leave to amend her statement. Instead, only after having the benefit of Defendant's objection to her inadequate statement of facts, (Docket No. 69), did Plaintiff attempt to

amend them. Plaintiff's attempt at curing the defect did not
come in the form of moving the Court for leave to amend her
statements, but instead Plaintiff submitted an entirely new
statement of uncontested material facts, disguised as a sur-
reply. The Court will not approve of this barefaced attempt at
circumventing proper and timely compliance with the Local Rules,
by effectively giving Plaintiff another turn at the bat.
Plaintiff's opposition to Defendant's facts is inadequate under
Local Rule 56(c) and will thus not be taken into account. *See*
Martinez Burgos v. Baxter, No. 10-1372, slip op. at 2-4 (1st Cir.
Aug. 26, 2011).

As to Defendant's objections, Defendant Cooperativa objects
to Magistrate Judge McGiverin's denial of summary judgment on
Plaintiff's claim of ADEA age discrimination. Defendant argues
that the denial of summary judgment on the ADEA age
discrimination claim is premised on the Magistrate Judge's error
in finding that Cooperativa did not cite to record evidence of
Pagán's or Báez's written warnings and therefore could not
overcome Báez's showing that she was similarly situated to
Pagán, but treated differently.

Defendant did cite to Báez's admonishment of February 2005,
albeit incorrectly. Nonetheless, the objection is irrelevant.
Disparate treatment is but one of the avenues that Plaintiff

used to show that the purported reason for her termination was pretextual, and that the true motivation was her age.

López constantly made offensive and embarrassing comments regarding Báez's age and pregnancy. Considering the fact that he admittedly is the final decision maker on firing employees, his comments alone are enough to create a triable issue as to whether the true reason behind her dismissal was Báez's allegedly deficient work performance, or if that was only a pretext to fire her because of her age. <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 55 (1st Cir. 2000).

Plaintiff Báez also established pretext by pointing out inconsistencies in Cooperativa's proffered reasons for her dismissal. <u>Domínguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st Cir. 2000). Defendant Cooperativa has maintained that Báez's poor work performance is what led to her termination. However, after the litigation commenced, López stated that Báez was also terminated due to Cooperativa's need to cut costs and downsize the workforce. Downsizing or cost cutting measures were not mentioned in Báez's letter of termination. This apparent inconsistency can support an inference of pretext by the jury. <u>Velez v. Thermo King</u>, 585 F.3d 441, 449 (1st Cir. 2009); <u>Santiago-Ramos</u>, 217 F.3d at 56.

The Court agrees with Magistrate Judge McGiverin that Plaintiff has come forth with enough evidence to create a triable issue on whether Cooperativa's purported reason for terminating Báez was pretextual, and whether the true reason for her discharge was her age.

Defendant's Motion for Summary Judgment is denied as to Plaintiff's claim of age discrimination under ADEA.

Defendant next objects to Magistrate Judge McGiverin's recommendation to deny summary judgment on Plaintiff's PDA pregnancy discrimination claim. Cooperativa again alleges that Báez has not met her burden of bringing forth evidence to establish that the reason given for her termination was pretextual. Defendant again focuses on the Magistrate Judge's decision to not take into account Plaintiff's shortcomings in showing disparate treatment between her and other pregnant employees at Cooperativa.

Defendant's argument here is also unavailing. Magistrate Judge McGiverin's decision to not devote attention to Defendant's attempt to discredit evidence of disparate treatment is not hard to understand.[2]

---

[2] Evidence of two other Cooperativa employees, Aida and Anesely, who were pregnant during their time at Cooperativa and were allegedly not discriminated against was not considered by the Magistrate Judge because they were not tellers, and thus were not similarly situated to Báez. Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 451 (1st Cir. 2009). The Court makes no ruling on whether these employees were similarly situated to

**Civil No.** 08-2045 (JAG)                                                     25

The Court again points towards Defendant López's repeated distasteful and insulting comments on Báez's age, pregnancy and intentions of becoming pregnant, and we hold they are sufficient to allow an inference that the reasons given for her termination were pretextual. <u>Santiago-Ramos</u>, 217 F.3d at 55. On one particular occasion, López apparently remarked that if Báez were to vomit, it would not be known whether the cause of regurgitation would be menopause or her pregnancy.

Plaintiff has also met her burden of proffering evidence of pretext, by showing temporal proximity between the protected trait and the adverse employment action. <u>Smith v. F.W. Morse & Co., Inc.</u>, 76 F.3d 413, 425 (1st Cir. 1996). Here, Báez was terminated only about three weeks after her May 2007 miscarriage, maternity leave and expression of intent to become pregnant again. The temporal proximity is evident, and this inference the Court draws in favor of Plaintiff. <u>Leary v. Dalton</u>, 58 F.3d 748, 751 (1st Cir. 1995); <u>Morissey v. Boston Five Cents Sav. Bank, F.S.B.</u>, 54 F.3d 27, 31 (1st Cir. 1995).

Summary Judgment is denied as to Plaintiff's Title VII pregnancy discrimination claim.

Defendant also objects to Magistrate Judge McGiverin's recommendation to deny summary judgment on Plaintiff's claim of

Báez, considering that the same result is reached regardless of the Magistrate Judge's decision to not take into account the testimony regarding Aida and Aenesely.

PDA retaliation averring that the Magistrate Judge is mistaken in that the Report and Recommendation confuses the analyses for PDA pregnancy discrimination and PDA retaliation as being identical.

The Magistrate Judge is not mistaken. The Report and Recommendation does not purport that the analyses for "disparate treatment pregnancy discrimination" under PDA and for retaliation under PDA are identical.

First of all, although it is at times referred to that way, disparate treatment is not a claim, it is one way, among others, to establish a claim of discrimination under Title VII. Second, while the elements of a prima facie claim of pregnancy discrimination and one for retaliation under PDA are different indeed, once this initial hurdle is overcome, a plaintiff may use the same evidence to establish pretext and discriminatory animus. Finally, a retaliation claim under both ADEA and PDA, as the Magistrate Judge correctly states in the Report, both entail the same Title VII analytical framework. *Compare* Bennett v. Saint-Gobain Corp, 507 F.3d 23, 32 (1st Cir. 2007) *and* Santiago-Ramos, 217 F.3d at 57. Perhaps that is the source of Defendant's confusion.

To be sure, a Plaintiff can establish a prima facie case of retaliation under PDA by showing that: (1) she engaged in

conduct that Title VII protects; (2) she suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity. Santiago-Ramos, 217 F.3d at 57; Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). Báez was terminated shortly after returning from maternity leave after her miscarriage; maternity leave is protected activity under Title VII. F.W. Morse & Co., Inc., 76 F.3d at 424. Temporal proximity is enough to establish a causal connection in a Title VII prima facie retaliation claim, which Plaintiff has also shown. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004). Finally, though Defendant adduces a legitimate reason for Báez's termination, as explained above, Plaintiff has proffered enough evidence to show that whether the reason given for her termination is pretextual or not, is a matter best left for the jury.

Summary judgment is denied on Plaintiff's PDA retaliation claim.

Defendant Cooperativa also objects to Magistrate Judge McGivern's reliance on Landrau-Romero v. Banco Popular, 212 F.3d 607, 611-612 (1st Cir. 2000), to recommend denial of Defendant's administrative exhaustion argument. Though the argument is not entirely comprehensible, from what best the

Court can gather, Defendant argues that Landrau-Romero is a racial discrimination case not applicable to Báez's claims of age and pregnancy discrimination.

The argument is inapposite. The language of the holding in Landrau-Romero is clearly broad enough to encompass all Title VII claims of discrimination, and not only those based on race.

While elaborating on the issue of when the clock begins to run on claims of workplace discrimination, Judge Campbell refers to Title VII generally, and not to claims of racial discrimination particularly. Landrau-Romero, 212 F.3d 607. Furthermore, the elements of a cause of action for Title VII racial discrimination mirror those for a prima facie claim under ADEA, and PDA. *Compare* Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003); González v. El Día, Inc., 304 F.3d 63, 68 (1st Cir. 2002); *and* Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996). Should the running of the statute of limitations be any different? We think not. In any case, Landrau-Romero is sound reasoning and the Court will abide by it.

Before opening the gates of the court, a Title VII claimant is initially required to file his claim before the EEOC, or the appropriate state agency within 300 days of the alleged adverse employment action. Landrau-Romero v. Banco Popular, 212 F.3d

607, 611-612 (1st Cir. 2000);   <u>Bonilla v. Muebles J.J. Alvarez,</u>
<u>Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999). Plaintiff Báez was
terminated on June 8, 2007. She filed her claim before the EEOC
on December 7, 2007, well within the required 300 day period.
Her claim is not time barred.

Finally, Defendant objects to Magistrate Judge McGiverin's
recommendation to deny summary judgment on Plaintiff's Puerto
Rico law claims under Law 69, Law 80 and Law 100.

Regarding Defendant's argument on the Magistrate Judge's
recommendation to deny summary judgment on Laws 69 and 100,
Cooperativa merely states that "a review of the evidence in the
present case demonstrate[sic] that the plaintiff has failed to
prove any claim, be it for age or sex, under Law 100." (Docket
No. 93, p. 23). Since, according to Defendant, in <u>Delgado Zayas</u>
<u>v. Hops. Int. Med. Avanzada</u>, 137 D.P.R. 643 (1994) the Puerto
Rico Supreme Court analyzed Law 69 in the same manner as Law
100, Plaintiff has also failed to state a claim under Law 69.

Defendant's blanket statement that "a review of the
evidence in the present case" shows that Plaintiff is unable to
state a claim, does not add up to an objection under Local Rule
72(d). Though the burden of Rule 72 is by no mean onerous, some
minimal specificity is required of a party who objects to a
Magistrate Judge's findings and recommendations. A sweeping

claim of "not enough evidence" cannot suffice when the record clearly shows that the issues are contested and both parties have proffered evidence on the matters before the Court.

In any case, given that courts analyze Law 69 discrimination claims in a similar fashion as Title VII discrimination claims, it is hard to fathom how Plaintiff has evinced there are triable issues under Title VII, but not under Law 69, Pagán Alejandro v. PR ACDelco Serv. Ctr., Inc., 468 F. Supp. 2d 316, 328 (D.P.R. 2006) (citing Mejias Miranda v. BBII Acquisition Corp., 120 F. Supp. 2d 157, 174 (D.P.R. 2000)), or under the less demanding standards of Law 100 and Law 80.

Defendant's motion for summary judgment is also denied as to Plaintiff's Puerto Rico law claims under Laws 69, 80 and 100.

**CONCLUSION**

Defendant's Motion for Summary Judgment is **DENIED** on Plaintiff's claims of ADEA age discrimination, PDA retaliation and pregnancy discrimination, and claims under Puerto Rico Laws 69, 80, and 100. Summary Judgment is **GRANTED** on Plaintiff's claims of PDA and ADEA hostile work environment, ADEA retaliation, and claims under Puerto Rico Law 3. Partial judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico this 30th day of August, 2011.

<u>S/Jay A. García-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge