IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BAEZ-VIERA, *et al.*,<br><br>**Plaintiffs**<br><br>v.<br><br>COOPERATIVA ABRAHAM ROSA, *et al*,<br><br>**Defendants.** | **CIVIL NO.** 08-2045 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

The jury in this case found Defendants liable for violations of the Pregnancy Discrimination Act of Title VII, Puerto Rico Law 69, and Law 80. Conversely, the jury found Plaintiffs had not proved their case with respect to their claims brought pursuant to the Age Discrimination in Employment Act and Puerto Rico Law 100.

The jury awarded $32,000 in compensatory damages to Plaintiffs under Law 69.[1] That amount was doubled to $64,000 as mandated by that statute. See Campos-Orrego v. Rivera, 175 F.3d 89, 96 (1st Cir. 2001). This was the only concrete amount in damages awarded by the jury to Plaintiffs. Therefore, the Court

---
[1] The parties themselves supplied the verdict form that the jury used. (Docket No. 142). That form only asked the jury to submit concrete damages as to Puerto Rico Laws 69 and 100.

will construe this amount as strictly limited to compensatory damages under state law. See <u>Kerr-Selgas v. American Airlines, Inc.</u>, 69 F.3d 1205 (1st Cir. 1995)(where jury did not award compensatory damages on federal claims, district court correctly concluded that all compensatory damages represented compensation for injuries sustained in connection with state-law claims).

For Defendants' violations of Title VII, the jury awarded Plaintiffs "with the amount of money she would have earned as a teller for the Cooperativa Ahorro y Credito Abraham Rosa had she not been terminated under the PDA of Title VII." (Docket No. 156 at p. 2). Finally, the jury provided only a liability verdict against Defendants under Law 80.

Two days after the jury returned its verdict, the parties requested an extension of time to "reach an agreement with regard to the portions of severance pay under Local Law 80 and the back pay." (Docket No. 154). On October 11, 2011, the parties informed the Court that they were unable to reach consensus on those issues. Instead, they asked the Court to enter Judgment "without the actual numbers," and requested an extension of time to file memoranda on their respective positions regarding severance and back pay. The Court granted the parties' request, and entered Judgment.

The parties then filed their respective memoranda. (Docket Nos. 159, 164, 170). The Court will now assess whether Plaintiffs are entitled to any additional amount in damages.

**ANALYSIS**

I.  Severance pursuant to Law 80

As mentioned above, the jury found that Defendants did not have just cause to dismiss Plaintiffs under Puerto Rico's wrongful termination statute, Law 80. Plaintiffs seek to cash in on that determination, asking the Court for $12,749.76 in severance pay as provided by that statute. Defendants object to this request, arguing that a grant of severance pay would be redundant because the jury already granted compensatory damages under Law 69.

Courts have been consistent in finding that Puerto Rico Laws 69, 80 and 100 are all compensatory, or remedial, in nature. See Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 67 (1st Cir. 2005)(finding that the double damages provision of Puerto Rico Laws 69 and 100 are "most likely compensatory"); Beauchamp v. Holsum Bakers of P.R., 116 D.P.R. 522 (1985) (holding that Law 80 is remedial in nature). At any rate, it is evident that these statutes share the same

goal: to provide a claimant with compensation for injuries suffered as a consequence of the defendant's acts.

"'[T]he law abhors duplicative recoveries;' thus double awards for the same injury are impermissible." <u>Bogan v. City of Boston</u>, 489 F.3d 417, 425 (1st Cir. 2007)(citing <u>Dopp v. HTP Corp.</u>, 947 F.2d 506, 517 (1st Cir. 1991)). Simply put, a "plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole - not to be enriched." <u>Dopp</u>, 947 F.2d at 517. Because awards under Laws 80 and 69 are intended to redress the same injury, they cannot be given in tandem.

Here, the jury effectively awarded Plaintiffs $64,000 in compensatory damages for their claim under Law 69. Because the jury already indemnified Plaintiffs for Mrs. Baez's illegal termination through Law 69, additional compensation through Law 80 in the form of severance pay is not available. <u>See</u> <u>e.g.</u> <u>Selgas v. American Airlines, Inc.</u>, 858 F.Supp. 316, 326 (D.P.R. 1994)(striking an award under Puerto Rico Law 80 because Plaintiffs were granted a larger amount in damages under Law 69), <u>rev'd on other grounds</u>, 69 F.3d 1205 (1st Cir. 1995). Accordingly, Plaintiffs' request for severance pay under Law 80 is hereby DENIED.

II.  Equitable Remedies under Title VII

Congress afforded broad discretion to the district courts in fashioning just remedies under Title VII:

> If the court finds that the respondent has intentionally engaged in … an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay … or any other equitable relief as the court deems appropriate.' 42 U.S.C. s 2000e-5(g) (1970 ed., Supp. III) (emphasis added).

The jury here returned a favorable verdict to Plaintiffs on their Title VII claims. Accordingly, the Court will examine whether Plaintiffs are entitled to any equitable remedies under Title VII.

A. Back Pay

The jury awarded Plaintiffs with "the amount of money she would have earned as a teller for the Cooperativa Ahorro y Credito Abraham Rosa had she not been terminated under the PDA of Title VII." (Docket No. 156 at p. 2).[2] Given that the jury did

---

[2] Defendants argue that this means the jury awarded Plaintiffs *nothing but* back pay under Title VII. However, after the return of a favorable verdict under Title VII to Plaintiff, the granting of equitable relief lies in the discretion of the Court. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). The jury verdict here moves the Court to grant Plaintiff some

not specify -and was not asked to provide- a specific number, the Court must now determine the correct amount. This computation is complicated by the fact that Mrs. Baez held several interim jobs after her termination from the Cooperativa Abraham Rosa but before the entry of judgment in this case. First, Mrs. Baez worked as a teller in the Cooperativa de Guaynabo from August 2007 until her involuntary termination in September 2010.[3] (Docket No. 164-1, ¶ 5-6). Next, she started working for the Burlington Coat Factory in August of 2011. Judgment in this case was entered on October 12, 2011.

The parties agree that back pay is warranted for the period starting on June 8, 2007, corresponding with her termination at the Cooperativa Abraham Rosa, and ending on September 2010, the date she was fired from the Cooperativa de Guaynabo. This amount, according to defendants, totals $23,939.83 – exclusive

---

amount in back pay – but it does not preclude the Court from granting other equitable relief available under Title VII (such as prejudgment interest or front pay) on its own accord. 42 U.S.C. s 2000e-5(g)("any other equitable relief as the court deems appropriate" may be granted).

[3] Mrs. Baez testified at trial that she committed a clerical error while she was working at the Cooperativa de Guaynabo. Though the parties dispute whether her mistake was willful or not, it is undisputed that Mrs. Baez's mistake was a violation of company rules, and one that could entail termination. For that reason, she was fired from her job.

of fringe benefits.[4] (Docket No. 159-1, p.2; Docket No. 164-3, p. 1-2).

After this period, however, the parties' positions on back pay diverge. Plaintiffs posit that defendants should be held liable for back pay until the date of judgment in this case, with adjustments made to account for Mrs. Baez's earnings in her two interim jobs. In turn, defendants contend that plaintiffs are not entitled to *any* amount in back pay after Mrs. Baez was fired from the Cooperativa de Guaynabo. To hold otherwise, argue defendants, would be to reward plaintiffs (and punish defendants) for Mrs. Baez's negligence. Therefore, the Court must determine the additional back pay due to Plaintiffs for the period of time starting on September 11, 2010 and ending on October 12, 2012 – the period of time corresponding to the dates of Mrs. Baez's termination at the Cooperativa de Guaynabo and the entry of judgment in this case, respectively.

"An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 379 (1st Cir. 2004). This remedy is a "presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case." Id. Given its equitable nature,

---

[4] The Court will discuss back pay as to benefits below.

the question of whether back pay is warranted lies in the discretion of the court. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). Even then, courts must be cautious in exercising this discretion. "[B]ack pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of [1] eradicating discrimination throughout the economy and [2] making persons whole for injuries suffered through past discrimination." Id.

"During the back pay period, individuals have an obligation to exercise 'reasonable diligence' in finding alternative suitable employment." Johnson, 364 F.3d at 379 (citing 42 U.S.C. § 2000e-5(g)(1)). Back pay awards are therefore offset by the amount that could have been earned with reasonable diligence after the discharge. Quinones Candelario v. Postmaster Gen. of United States, 906 F.2d 798, 799-802 (1st Cir. 1990). This includes any amounts that were not earned because the employee was fired from the interim job due to misconduct. Id. (citing Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1277 (4th Cir. 1985)). But contrary to defendant's position, the First Circuit has squarely held that it is "error to [completely] cut off, as a matter of law, the ability of a successful Title VII plaintiff to receive further back pay or front pay once he is fired for misconduct from the position he takes after leaving

the discriminatory employer." Johnson, 364 F.3d at 381. Thus, it is clear that Plaintiffs are entitled to some amount in back pay after Mrs. Baez was terminated from the Cooperativa de Guaynabo.

Determining *exactly* how much additional back pay is warranted requires a more nuanced analysis. The Johnson court, in particular, made note of two unresolved questions in this Circuit that are pertinent to our analysis, but which have not been discussed by the parties in their briefs. The first is "whether back pay should be withheld for the period during which the employee is trying to find another job, or [whether it] should remain at the level it was at prior to the firing."[5] Johnson, 364 F.3d at 381 n.11; see also Id. at n.15. This is relevant here because Mrs. Baez spent nine months unemployed after being fired from the Cooperativa de Guaynabo and before finding a job at the Burlington Coat Factory. (Docket No. 164-3, p.2). The second occurs when the employee holds two or more

---

[5] On this point, the Fourth and Fifth Circuits have held that back pay is not available for "periods of unemployment following justified discharge," reasoning that "[d]uring such a period the claimant has excluded himself from the employment market." Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1280 (4th Cir. 1985); see Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 935 (5th Cir. 1996). The Eighth Circuit took a more moderate stance, holding that "the amount the employee would have earned had he not quit is to be offset for the remainder of the back pay period." See NLRB v. Hopcroft Art & Stained Glass Works, Inc., 692 F.2d 63, 65 (8th Cir. 1982).

interim jobs after being fired, and the salary from the first job is greater than the second. The question is: what is the correct back pay award for the period in which the employee is working at the second interim job? Johnson, 364 F.3d at 381 n.16. This is also relevant here, given that Mrs. Baez' salary at the Cooperativa de Guaynabo was higher than her salary at the Burlington Coat Factory. Even so, the determination this Court must make is ultimately grounded in equity. And the "hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir. 1989)(en banc).

Two competing considerations dominate this analysis. On one side of the equitable scale lies, in general terms, the presumptive entitlement of back pay to a successful Title VII plaintiff. The jury found that the Cooperativa had illegally terminated Mrs. Baez on the basis of pregnancy discrimination. This makes the Cooperativa Abraham Rosa chiefly responsible for all wage losses that Mrs. Baez suffered as a result of her termination. See Albemarle Paper Co., 422 U.S. 405, 419-21 (1975). The second is specific to this case: Mrs. Baez was fired from the Cooperativa de Guaynabo because she had committed a clerical mistake, a blunder she had made before at the

Cooperativa Abraham Rosa. While the parties may disagree whether Mrs. Baez's mistake was willful or not, the fact remains that Mrs. Baez's termination -and accordingly her reduction in interim pay- was solely due to her own negligence. Therefore, the Court believes it would be unfair to require the Cooperativa to completely cover for the period in which Mrs. Baez was unemployed.

The Court will harmonize these countervailing factors by taking the middle road: for the rest of the back pay period after Mrs. Baez's termination from the Cooperativa de Guaynabo, back pay shall remain at the level it was at the moment of her termination.[6] For that period, back pay is therefore awarded to Plaintiffs in the amount of $9302.04.[7] This solution allows Plaintiffs to maintain their presumptive entitlement to back pay, while making the Cooperativa's liability for back pay

---

[6] The Court concedes that this calculus oversimplifies the issue because it does not take into account Mrs. Baez's employment at the Burlington Coat Factory. However, she was employed at Burlington for less than three months before judgment was entered in this case. The difference in back pay with this factored in would be minute.

[7] At the time of her termination at the Cooperativa de Guaynabo, Mrs. Baez was making approximately $312.30 per week ($11,554.92 over 37 weeks). (See Docket No. 164-3). Her highest weekly salary at the Cooperativa Abraham Rosa was $398.43. (Id.). Therefore, her weekly loss for the remainder of the back pay period was $86.13 ($398.43-$312.30). This amount, multiplied by the number of weeks between her termination and the entry of judgment in this case (108) gives us the desired result: $9302.04.

independent of Mrs. Baez's clerical mistake at the Cooperativa de Guaynabo.[8] Furthermore, this result would not injure the cardinal principles that inform the award of equitable relief under Title VII. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)("eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"). A stiff penalty has still been imposed on the Cooperativa, and considering the totality of the damages, the Court is certain that Plaintiffs have been made whole.

A final matter must be addressed before moving on. Plaintiffs request compensation in the form of lost benefits and prejudgment interest. With regard to benefits, Plaintiffs argue that the Cooperativa Abraham Rosa should be held accountable for the totality of the fringe benefits Mrs. Baez stopped receiving when she was fired. According to the Defendant, this position is untenable because Mrs. Baez also received benefits at the Cooperativa de Guaynabo. Unfortunately for the Cooperativa, and though common sense would indicate otherwise, *nothing* on the

---

[8] Incidentally, this result is in practice indistinguishable from the rule established by the Eighth Circuit in NLRB v. Hopcroft Art & Stained Glass Works, Inc., 692 F.2d 63, 65 (8th Cir. 1982) ("[T]he amount the employee would have earned had he not quit is to be offset for the remainder of the back pay period"). This is reassuring because the First Circuit, for various reasons, seemed to prefer this result over the rule followed by the Fourth and Fifth Circuits. See Footnote 5, *supra*; see also Johnson, 364 F.3d at 383 n.15.

record shows that Mrs. Baez ever received fringe benefits at the Cooperativa de Guaynabo. Thus, the Court will award Plaintiffs with back pay for lost benefits in the amount of $19,321.86. (See Docket No. 164-3).

The Cooperativa's argument regarding prejudgment interest is similarly weak. Given our decision below regarding front pay, the Court will exercise its discretion and award Plaintiffs with prejudgment interest at the federal post-judgment rate contained in 28 U.S.C. § 1961. See Earnhardt v. Puerto Rico, 744 F.2d 1, 3 (1st Cir. 1984) (in a Title VII case the question of "whether [prejudgment interest is] necessary to make the plaintiff whole is within the discretion of the district court"); see e.g. Orr v. Mukasey, 631 F.Supp.2d 138 (D.P.R. 2009)(awarding pre-judgment interest at the federal post-judgment interest rate applicable on week prior to entry of judgment). As of October 12, 2011, that rate was set at 0.24% compounded annually.[9]

---

[9] The Court takes judicial notice of the federal post-judgment interest rate applicable on October 12, 2011. This is available at http://www.federalreserve.gov/releases/h15/20111011/. See http://www.uscourts.gov/FormsAndFees/Fees/PostJudgementInterestRates.aspx; see also Notice from the Clerk No. 01-04, Interest Rates on Judgments in the Federal Courts, available at http://www.prd.uscourts.gov/CourtWeb/a_interests.aspx.

In total, then, back pay is hereby awarded in the amount of $52,563.73.[10]

Front Pay

Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). An award of front pay lies within the sound discretion of the court, and should not be awarded unless reinstatement is impracticable or impossible. Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985).

To be brief, the reinstatement of Mrs. Baez to her original job at the Cooperativa is unfeasible. As Plaintiffs underscore in their brief, "the hostilities that [Mrs. Baez] suffered were imparted by Mr. Luis Lopez, the Executive President of the Cooperativa." (Docket No. 164, ¶ 21). According to Plaintiffs, Mr. Lopez is still the Cooperativa's executive president. The Court will not reinstate Mrs. Baez into a potentially charged and hostile atmosphere at the Cooperativa.

On that basis, Plaintiffs ask the Court to impose ten years in front pay. The Court finds that, considering this case in its entirety, any amount of front pay is excessive and overly

---

[10] The Court reaches this number by performing the following sum: $23,939.83 + $9302.04 + $19,321.86.

**CIVIL NO.** 08-2045 (JAG)                                                           15

speculative. On one hand, *ten years* of front pay is wishful thinking, particularly where Mrs. Baez lasted less than three performing the same job at the Cooperativa de Guaynabo before she was fired on account of her own negligence. On the other, Plaintiffs are already entitled to a substantial amount in compensation through the doubling provision of Law 69, back pay, and prejudgment interest on the entire award. See Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985)(a substantial award rendered on other grounds may make front pay inappropriate or excessive); see also Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir. 1992) and Tennes v. Massachusetts Dep't of Revenue, 944 F.2d 372, 381 (7th Cir. 1991). Finally, the Court considers that this amount has adequately made Plaintiffs whole. Thus, no more is needed.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs are entitled to $64,000.00 under Law 69 plus $53,113.94 in back pay under Title VII. Accounting for prejudgment interest at a rate of 0.24% per year for a period of 4.344 years,[11] the total amount due to Plaintiffs is $118,339.83. The Judgment shall be amended to reflect this amount.

IT IS SO ORDERED.

---

[11] From June 8, 2007 to October 12, 2011.

In San Juan, Puerto Rico, this 28th day of September, 2012.

                                                <u>S/ Jay A. Garcia-Gregory</u>
                                                  JAY A. GARCIA-GREGORY
                                          United States District Judge